| | |
|---|---|
| 1 | BINGHAM McCUTCHEN LLP<br>STEPHEN D. HIBBARD (SBN 177865) |
| 2 | JOHN D. PERNICK (SBN 155468)<br>URSULA M. HUSBY (SBN 215551) |
| 3 | Three Embarcadero Center<br>San Francisco, California  94111-4067 |
| 4 | Telephone:  415.393.2000 |
| 5 | Attorneys for Defendant<br>CREDIT SUISSE FIRST BOSTON |
| 6 | CORPORATION |

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ALAN LEFORT, Derivatively on Behalf of OPENWAVE SYSTEMS INC.,<br><br>            Plaintiff,<br><br>      v.<br><br>ALAN BLACK, ROGERS EVANS, ANDREW VERHALEN, ALAIN ROSSMAN, CHARLES PARRISH, DAVID KRONFELD, REED HUNDT, CREDIT SUISSE FIRST BOSTON CORPORATION, ROBERTSON STEPHENS, INC. f/k/a BANCBOSTON ROBERTSON STEPHENS, INC., and DOES 1-25, inclusive,<br><br>            Defendants,<br><br>      -and-<br><br>OPENWAVE SYSTEMS INC., a Delaware corporation,<br><br>            Nominal Defendant. | | No. C-02-2465 VRW<br><br>**DEFENDANT CREDIT SUISSE FIRST BOSTON CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED SHAREHOLDER DERIVATIVE COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:        February 6, 2003<br>Time:       2:00 p.m.<br>Judge:      Hon. Vaughn R. Walker<br>Courtroom:  6, 17th Floor |

21470418.1/23328-0011                                                                      Case No. C-02-2465 VRW

DEFENDANT CSFB'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST
AMENDED SHAREHOLDER COMPLAINT; MEMORANDUM OF POINTS IN SUPPORT THEREOF

| | |
|---|---|
| 1 | **NOTICE OF MOTION AND MOTION** |
| 2 | TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: |
| 3 | PLEASE TAKE NOTICE THAT on February 6, 2003, at 2:00 p.m., or as soon |
| 4 | thereafter as the matter may be heard, in Courtroom 6, 17th Floor of the above entitled Court, |
| 5 | located at 450 Golden Gate Avenue, San Francisco, California, 94102, before the Honorable |
| 6 | Vaughn R. Walker, Defendant Credit Suisse First Boston Corporation ("CSFB") will and hereby |
| 7 | does move the Court for an order dismissing the Plaintiff's Shareholder Derivative Complaint |
| 8 | ("Complaint") and each cause of action stated therein against CSFB.  This motion is made |
| 9 | pursuant to Rules 12(b)(6) and 23.1 of the Federal Rules of Civil Procedure on the grounds that |
| 10 | plaintiff lacks standing because he has not alleged (and cannot allege) that he owned any shares |
| 11 | of defendant Openwave at the time of the alleged wrongdoing.  This motion will be based on this |
| 12 | Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in |
| 13 | support thereof, the records on file with the Court in this matter, as well as such other matters |
| 14 | that the Court may properly consider at or before the hearing on this matter. |
| 15 | DATED:  December 5, 2002. |
| 16 | BINGHAM McCUTCHEN LLP |
| 17 | |
| 18 | By: _____/s/ Stephen D. Hibbard_____ |
| 19 | STEPHEN D. HIBBARD<br>Attorneys for Defendant Credit Suisse First |
| 20 | Boston Corporation |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |

21470418.1/23328-0011     1     Case No. C-02-2465 VRW

DEFENDANT CSFB'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST
AMENDED SHAREHOLDER COMPLAINT; MEMORANDUM OF POINTS IN SUPPORT THEREOF

# TABLE OF CONTENTS

Page

STATEMENT OF ISSUE.................................................................................................... 2

I. INTRODUCTION ................................................................................................... 2

II. STATEMENT OF FACTS ...................................................................................... 3

    A. The First Amended Complaint's Allegations ............................................ 3

    B. Procedural History ..................................................................................... 4

III. ARGUMENT ........................................................................................................... 4

    A. The Standard For Dismissal ....................................................................... 4

    B. To Maintain A Derivative Action, A Plaintiff Must Have Been A Shareholder At The Time Of The Transaction About Which He Complains ........ 5

    C. Plaintiff Did Not Own Openwave's Shares At The Time Of The Transaction About Which He Complains ............................................................... 7

        1. The Claimed Wrong – "Underpricing" – Was Complete As Of June 10, 1999 When The IPO Was Priced ................................................. 7

        2. Plaintiff Cannot Establish that He Owned Any Openwave Shares When The IPO Price Was Set ................................................................ 10

IV. CONCLUSION ..................................................................................................... 11

21470418.1/23328-0011      i      Case No. C-02-2465 VRW

DEFENDANT CSFB'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST
AMENDED SHAREHOLDER COMPLAINT; MEMORANDUM OF POINTS IN SUPPORT THEREOF

TABLE OF AUTHORITIES

Page

**Cases**

*7547 Partners v. Beck*, 682 A.2d 160 (Del. 1996) ............................................................. 8, 9

*Associate General Contractors v. California State Council*, 459 U.S. 519 (1983) ............ 4

*Brambles USA, Inc. v. Blocker*, 731 F. Supp. 643 (D. Del. 1990) ..................................... 10

*Daisy Systems Corp. v. Finegold,* 1988 WL 166235, *2 (N.D. Cal. 1988) ......................... 6

*Harff v. Kerkorian*, 324 A.2d 215 (Del. Ch. 1974) .............................................................. 6

*Hawes v. City of Oakland*, 104 U.S. 450 (1882) ................................................................. 5

*In re Bank of New York Derivative Litigation,* 173 F. Supp. 2d 193 (S.D.N.Y. 2001) ........................................................................................................................ 6

*In re Syntex Corp. Sec. Litig.*, 95 F.3d 922 (9th Cir. 1996) ................................................. 4

*In re Verifone Sec. Litig.*, 11 F.3d 865 (9th Cir. 1993) ....................................................... 4

*Kona Enterprises, Inc. v. Estate of Bishop*, 179 F.3d 767 (9th Cir. 1999) ......................... 6

*Leung v. Schuler*, 2000 WL 264328 (Del. Ch. Feb. 29, 2000) ........................................... 6

*Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399 (7th Cir. 2000) .................................... 9

*Newirk v. W.J. Rainey, Inc.*, 76 A.2d 121 (Del. Ch. 1950) .................................................. 9

*Noland v. Barton,* 741 F.2d 315 (10th Cir. 1984) ................................................................ 5

*Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530 (9th Cir. 1984) ............................ 5

*Sax v. World Wide Press*, 809 F.2d 610 (9th Cir. 1987) ..................................................... 6

*Schrieber v. R.G. Bryan*, 396 A.2d 512 (Del. Ch. 1978) .................................................. 10

*Weinhaus v. Gale*, 237 F.2d 197 (7th Cir. 1956) ............................................................... 10

*Youngman v. Tahmoush*, 457 A.2d 376 (Del. Ch. 1982) .................................................... 6

TABLE OF AUTHORITIES
(continued)

Page

**Statutes**

28 U.S.C. § 1332(a) ............................................................................................................ 4

8 Del. Code § 327 (2001) .................................................................................................... 6

**Other Authorities**

Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d,* § 1828 (1986) .................... 6

**Rules**

Federal Rules of Civil Procedure 12(b)(6) ........................................................................... 1

Federal Rules of Civil Procedure 23.1 ......................................................................... passim

21470418.1/23328-0011                              iii                              Case No. C-02-2465 VRW

DEFENDANT CSFB'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST
AMENDED SHAREHOLDER COMPLAINT; MEMORANDUM OF POINTS IN SUPPORT THEREOF

**STATEMENT OF ISSUE (Civil Local Rule 7-4(a)(3))**

Does a plaintiff have standing to maintain a derivative action if he did not own any of the corporation's shares at the time of the corporate transaction about which he complains?

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Plaintiff Alan Lefort ("Lefort"), a shareholder of nominal defendant Openwave Systems Inc. ("Openwave"), alleges that Openwave, a Delaware corporation, sold its shares to the public at too low a price in its June 11, 1999 initial public offering ("IPO"). Based upon this allegation, Plaintiff purports to allege claims for breach of fiduciary duty and unjust enrichment against seven individuals who were directors and/or officers of Openwave at time of the IPO (the "Individual Defendants"), and also against the lead and managing underwriters of Openwave's IPO, Credit Suisse First Boston Corporation ("CSFB") and Robertson Stephens Inc. ("Robertson Stephens") (collectively "the Underwriters"). In addition, Plaintiff sues the Individual Defendants for negligence and sues the Underwriters for aiding and abetting and conspiracy to breach a fiduciary duty, and for breach of an agent's duty to its principal.

Because Plaintiff did not own any shares of Openwave's stock at the time the Individual Defendants and the Underwriters set the price of the shares sold in the IPO, the Court must dismiss all claims asserted by Plaintiff against CSFB (and, indeed, against every defendant). Rule 23.1 of the Federal Rules of Civil Procedure, which establishes the requirements a plaintiff must meet in order to bring an action derivatively, requires that a plaintiff must have been a shareholder of the corporation *at the time of the transaction of which the plaintiff complains*. Here, Plaintiff's lawsuit focuses on a single transaction – the price set by the Defendants for selling Openwave's shares in its IPO. Because Plaintiff has not alleged (and cannot allege) that he was a shareholder of Openwave when the IPO price was set – that is, that Plaintiff owned shares in Openwave before it went public – he fails to satisfy Rule 23.1's

21470418.1/23328-0011

2

Case No. C-02-2465 VRW

DEFENDANT CSFB'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST
AMENDED SHAREHOLDER COMPLAINT; MEMORANDUM OF POINTS IN SUPPORT THEREOF

1  requirements and the Court must dismiss his case.

2  **II.     STATEMENT OF FACTS**

3      **A.     The First Amended Complaint's Allegations**

4          Openwave "works with device manufacturers . . . to enable Internet access for

5  wireless telephone." *See* First Amended Shareholder Derivative Complaint ("FAC") ¶ 13.

6  Openwave's shares were first sold to the public in an IPO on June 11, 1999. FAC ¶ 1. At the

7  time of the IPO, each of the Individual Defendants – Alan Black, Roger Evans, Andrew

8  Verhalen, Alain Rossman, Charles Parrish, David Kronfeld, and Reed Hundt – were officers

9  and/or directors of Openwave. FAC ¶ 6. CSFB and Robertson Stephens were the lead or

10 managing underwriters for Openwave's IPO. FAC ¶ 5.

11         In the months leading up to its June 11, 1999 IPO, Openwave, which was then

12 known as Unwired Planet, Inc. and later Phone.com, filed and amended its registration statement,

13 ultimately increasing by more than 60% the price at which it sold its shares. On March 29, 1999,

14 Openwave filed its initial registration statement on Form S-1 with the SEC. FAC ¶ 40. On May

15 4, 1999, the Underwriters and Individual Defendants set the share price at $10 to $12 and set the

16 number of IPO shares at 4,000,000. FAC ¶ 41. Nearly five weeks later, this estimated range was

17 increased to $14 to $15 per share. FAC ¶ 42. Later that same day, June 10, 1999, Openwave

18 filed the final prospectus for the offering. As the final prospectus demonstrates, the Underwriters

19 and the Individual Defendants once again increased the share price and established a final

20 offering price of $16 per share. FAC ¶ 43.

21         The next day, on June 11, 1999, Openwave's IPO was declared effective and

22 Openwave successfully sold 4,000,000 shares to the public at $16 per share. FAC ¶ 47.

23         The Complaint contains no allegation that Plaintiff owned any shares of

24 Openwave's stock when the Individual Defendants and the Underwriters set the final price for

25 the IPO at $16 on June 10, 1999. On the contrary, Plaintiff claims only to have acquired his

26 shares at some later, unspecified time "before there was disclosure to the public or Plaintiff of

the wrong complained of." FAC ¶¶ 12, 76.

B. **Procedural History**

Plaintiff originally filed this action on May 3, 2002 in San Mateo County Superior Court. CSFB timely removed the action to this Court on May 22, 2002. The Court has original jurisdiction over this litigation based on the diversity of the parties and the amount in controversy pursuant to 28 U.S.C. § 1332(a). The Court denied Plaintiff's Motion to Transfer this case to the District Court for the Southern District of New York on November 19, 2002.

On July 12, 2002, Nominal Defendant Openwave filed a Motion to Dismiss the Complaint based on Plaintiff's failure to demand that Openwave's Board of Directors bring this lawsuit, or, alternatively, plead facts demonstrating the futility of demand. Robertson Stephens joined Openwave's Motion to Dismiss on August 14, 2002. On September 5, 2002, Plaintiff made a demand on the Openwave Board of Directors to institute this action against the Individual Defendants and the Underwriters. FAC ¶ 77. At this time, the Openwave Board of Directors is considering but has not concluded how the complaint should be addressed. The parties stipulated that Plaintiff could amend his complaint and Plaintiff filed his First Amended Shareholder Derivative Complaint on November 5, 2002.

III. **ARGUMENT**

A. **The Standard For Dismissal**

Although when considering a defendant's motion to dismiss, courts must accept the plaintiff's allegations of material fact as true and must construe them in the light most favorable to the plaintiff, *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996), courts are not obligated to assume that "the [plaintiff] can prove facts that [he] has not alleged . . . ." *Associate General Contractors v. California State Council*, 459 U.S. 519, 526 (1983). Moreover, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *In re Verifone Sec. Litig.*, 11 F.3d 865, 868 (9th Cir. 1993). Motions to dismiss are properly granted when a complaint lacks either a cognizable

21470418.1/23328-0011 4 Case No. C-02-2465 VRW

DEFENDANT CSFB'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED SHAREHOLDER COMPLAINT; MEMORANDUM OF POINTS IN SUPPORT THEREOF

1 legal theory or facts sufficient to support a cognizable legal theory. *Robertson v. Dean Witter*
2 *Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984) (*citing* 2A J. Moore, *Moore's Fed. Practice*
3 ¶12.08 at 2271 (2d ed. 1982)).

4     Here, even accepting Plaintiff's factual allegations as true and construing them in
5 the light most favorable to him, Plaintiff has not alleged – nor can he allege – facts sufficient to
6 demonstrate that he owned shares in Openwave when the IPO price was set. Therefore, Plaintiff
7 does not have standing to bring his claims under any cognizable legal theory. The Court should
8 dismiss this action.

    **B.    To Maintain A Derivative Action, A Plaintiff Must Have Been A Shareholder At The Time Of The Transaction About Which He Complains.**

11     Rule 23.1 of the Federal Rules of Civil Procedure, which contains the
12 requirements for bringing a derivative action in federal court, provides in relevant part that a
13 plaintiff who seeks to bring a derivative action on behalf of a corporation must have been a
14 shareholder of the corporation at the time of the transaction about which the plaintiff complains:

> In a derivative action brought by one or more shareholders . . . to enforce a right of a corporation . . . the complaint shall be verified and shall allege (1) that <u>the plaintiff was a shareholder</u> . . . <u>at the time of the transaction of which the plaintiff complains</u> . . . .

18 Fed. R. Civ. Proc. 23.1 (emphasis added).

19     This longstanding rule of corporate law, known as the "contemporaneous
20 ownership" rule, was first announced by the Supreme Court in *Hawes v. City of Oakland*, 104
21 U.S. 450 (1882), where the Court stated that, for a stockholder to be a proper derivative plaintiff,
22 that stockholder must have been a stockholder at the time of the transactions of which he
23 complains. *Id.* at 461. Ever since *City of Oakland,* federal courts have routinely applied this
24 principle, which was codified as a rule of federal practice in 1882 and exists today as part of
25 Rule 23.1. *See, e.g., Noland v. Barton,* 741 F.2d 315, 317 (10th Cir. 1984) ("The
26 'contemporaneous ownership' rule embodied in Rule 23.1 requires that the complaint shall aver

that the 'plaintiff was a shareholder or member at the time of the transaction of which he complains . . . .'"); *In re Bank of New York Derivative Litigation,* 173 F. Supp. 2d 193, 197 (S.D.N.Y. 2001) ("Both Federal and New York law require that shareholders own stock in the corporation at the time that the complained-of transaction occurred to have standing to bring derivative actions."); *Daisy Systems Corp. v. Finegold,* 1988 WL 166235, *2 (N.D. Cal. 1988) (Rule 23.1 compels dismissal of derivative claims as to all allegations of wrongdoing before plaintiff became a shareholder.)*; see generally,* Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d,* § 1828 (1986).

Moreover, Rule 23.1's contemporaneous ownership requirement applies to all derivative actions pending in federal court, including actions where jurisdiction is based on diversity. *Kona Enterprises, Inc. v. Estate of Bishop*, 179 F.3d 767, 769 (9th Cir. 1999) ("Rule 23.1's continuous ownership requirement is procedural in nature and thus applicable to diversity actions."); *accord*, *Sax v. World Wide Press*, 809 F.2d 610, 613 (9th Cir. 1987) ("[I]n federal courts, derivative suits are subject to the procedural requirements of Fed. R. Civ. P. 23.1.").

Nor is the contemporaneous ownership rule limited to cases pending in federal courts. Delaware, Openwave's state of incorporation, enforces the same rule. 8 Del. Code § 327 (2001) ("In any derivative suit instituted by a stockholder of a corporation, it shall be averred in the complaint that the plaintiff was a stockholder of the corporation at the time of the transaction of which such stockholder complains or that such stockholder's stock thereafter devolved upon him by operation of law."); *Leung v. Schuler*, 2000 WL 264328 at *7 (Del. Ch. Feb. 29, 2000) (If the derivative plaintiff was not a shareholder at the time of the transaction complained of "the derivative claims must be dismissed."); *Youngman v. Tahmoush*, 457 A.2d 376, 379 (Del. Ch. 1982) ("[T]hat the plaintiff be a shareholder of the corporation at the time of the transaction of which he complains" is an "explicit standing requirement for maintaining a derivative suit."); *Harff v. Kerkorian*, 324 A.2d 215, 218-19 (Del. Ch. 1974) ("[O]nly one who was a stockholder at the time of the transaction or one whose shares devolved upon him by operation of law may

21470418.1/23328-0011     6     Case No. C-02-2465 VRW

DEFENDANT CSFB'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST
AMENDED SHAREHOLDER COMPLAINT; MEMORANDUM OF POINTS IN SUPPORT THEREOF

maintain a derivative action. . . . Delaware law seems clear that stockholder status at the time of the transaction being attacked . . . is essential."), *aff'd in part, rev'd in part on other grounds*, 347 A.2d 133 (Del. 1975).

### C. Plaintiff Did Not Own Openwave's Shares At The Time Of The Transaction About Which He Complains.

In determining whether Plaintiff has satisfied Rule 23.1's contemporaneous ownership requirement, this Court must make two inquiries: (1) when did the transaction about which Plaintiff complains occur and (2) when did Plaintiff first acquire shares of Openwave's stock.

#### 1. The Claimed Wrong – "Underpricing" – Was Complete As Of June 10, 1999 When The IPO Was Priced.

All of Plaintiff's claims against CSFB, as well as the other defendants, are based upon Plaintiff's core allegation that the price at which Openwave sold shares in the IPO was too low:

> By knowingly underpricing the IPO, the Individual Defendants wasted a corporate opportunity to secure additional capital, in breach of their fiduciary duties to the Company. By facilitating this underpricing, CSFB aided and abetted the insiders in breaching their fiduciary duties to the Company, which was damaged thereby.

FAC ¶ 7. Plaintiff sounds this mantra throughout his Complaint. *See, e.g.,* FAC ¶ 3 ("If the shares had been more appropriately priced, Openwave would have received much more money from the offering."); FAC ¶ 25 ("This is a derivative action brought by a shareholder of nominal defendant Openwave in connection with the deliberate underpricing of Openwave's stock in its IPO by the defendants to the detriment of Openwave."); FAC ¶ 85 ("[T]he Individual Defendants, in tandem with the Underwriters, caused or permitted the underpricing of the Company's IPO shares."); FAC ¶ 94 ("[T]he Underwriters knowingly worked with the Individual Defendant's to underprice Openwave's IPO shares.").

Because the transaction about which Plaintiff complains is the decision to price Openwave's shares for the IPO at $16 per share, the answer to the Court's first inquiry – when

21470418.1/23328-0011     7     Case No. C-02-2465 VRW

DEFENDANT CSFB'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED SHAREHOLDER COMPLAINT; MEMORANDUM OF POINTS IN SUPPORT THEREOF

did the transaction at issue occur? – is clear.  The IPO price was set on June 10, 1999.  *See* FAC ¶ 43 ("At the time of the filing of the final prospectus, also on June 10, 1999, the Underwriters and the Individual Defendants increased Openwave's IPO price to $16.").  The transaction that Plaintiff complains about thus occurred on June 10, 1999.

In a case squarely on point, *7547 Partners v. Beck*, 682 A.2d 160 (Del. 1996), the Delaware Supreme Court applied the contemporaneous ownership test and dismissed a putative IPO "underpricing" derivative lawsuit involving the IPO for Boston Chicken, Inc. because, as here, the plaintiff did not own any Boston Chicken shares at the time its board established the price of the shares.  There, the plaintiff, who purchased shares in the IPO, initially filed a complaint alleging that Boston Chicken's directors were "grossly negligent in setting the IPO price at the 'absurdly low' amount of $20 per share."  *7547 Partners*, 682 A. 2d at 161.  With the same clarity of hindsight at work in this case, the plaintiff in *7547 Partners* alleged that Boston Chicken's IPO had been "underpriced" at $20 per share because its shares opened trading at $45 per share and closed on that first day of trading at $48.50 per share.  *Id.*  The trial court granted defendants' motion to dismiss the original complaint, finding that the plaintiff did not meet the standing requirements of the contemporaneous ownership rule because any wrongs arising from the pricing of the IPO shares necessarily occurred before the plaintiff purchased its stock.  *Id*.

Electing not to appeal that dismissal, the plaintiff instead sought leave to file an amended complaint that focused on the side-by-side private placement of Boston Chicken's shares that accompanied the IPO.  *Id*. at 161-162.  In the private placement, several of Boston Chicken's directors and officers purchased 900,000 shares at a price of $18.60 per share.  *Id*. at 161.  According to the proposed amended complaint, the plaintiff alleged that Boston Chicken's directors breached their fiduciary duty by authorizing the private placement to themselves at the IPO price less the amount of the underwriters' discount.  *Id*. at 162.  The plaintiff thus sought to cure its lack of standing by alleging that the directors' breaches of fiduciary duty "ripened and culminated in the delivery of shares pursuant to the Private Placement, which took place on

21470418.1/23328-0011    8    Case No. C-02-2465 VRW

DEFENDANT CSFB'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST
AMENDED SHAREHOLDER COMPLAINT; MEMORANDUM OF POINTS IN SUPPORT THEREOF

1  November 16, 1993, at the same time that Partners received its shares." *Id*. (internal quotation
2  marks omitted).
3  The trial court rejected this argument, holding that the plaintiff lacked standing
4  notwithstanding the proposed amended complaint's allegations. The court found that the time of
5  the alleged wrong was when the directors set the price for the private placement. *Id*. Since the
6  terms of the private placement were fully disclosed in the final prospectus issued before the IPO
7  was declared effective, the court held that the alleged "underpricing" took place prior to the IPO.
8  *Id*. Therefore, the plaintiff, who admittedly purchased its shares in the IPO, could not establish
9  that it was a shareholder of Boston Chicken when the terms of the private placement were set,
10 and did not have standing. *Id*. at 163.
11 The Delaware Supreme Court affirmed. On appeal, the plaintiff argued that it
12 satisfied the contemporaneous ownership rule because the directors' breaches were not complete
13 until the directors received their shares on November 16, 1993, by which time the plaintiff had
14 acquired its shares in the IPO. *Id*. at 162. The Supreme Court rejected that argument,
15 determining that "the timing of the allegedly wrongful transaction must be determined by
16 identifying the 'wrongful acts which [Partners] want[s] remedied and which are susceptible of
17 being remedied in a legal tribunal.'" *Id*. (quoting *Newirk v. W.J. Rainey, Inc*., 76 A.2d 121, 123
18 (Del. Ch. 1950)). The Supreme Court found that, in challenging the "underpricing," the plaintiff
19 was actually challenging the price set for the private placement and not some technicality of its
20 consummation through delivery of the shares, namely, when the directors' shares were actually
21 delivered, and thus lacked standing. *Id*. at 162-163.
22 *7547 Partners* is the straightforward and logical application of the longstanding
23 rule that, when a derivative action attacks specific terms of a particular transaction, the "time of
24 the transaction of which plaintiff complains" is when those terms are established, and the
25 plaintiff, to have standing, must have owned shares at that time. *See*, *e.g.*, *Montgomery v. Aetna*
26 *Plywood, Inc.*, 231 F.3d 399, 406-407 (7th Cir. 2000) (class could not challenge as "too low" the

price set by the directors for "giving away control of the company" because class members were not shareholders when the price was set); *Weinhaus v. Gale*, 237 F.2d 197, 199-200 (7th Cir. 1956) (plaintiff complaining that directors approved sale of company stock for a price of $10,000,000 when stock was worth $16,500,000, must show that he was a shareholder at the time of the sale); *Brambles USA, Inc. v. Blocker*, 731 F. Supp. 643, 649-50 (D. Del. 1990) (plaintiff seeking rescission of merger agreement on the ground that the merger had been accomplished through fraud must allege he was a shareholder at the time the merger became effective); *Schrieber v. R.G. Bryan*, 396 A.2d 512, 516-17 (Del. Ch. 1978) (plaintiff complaining of terms of management and tax agreements must show that he purchased his stock before agreements were negotiated and agreed upon).

The reasoning of *7547 Partners* and similar cases controls this action. All of the wrongdoing alleged in the Complaint relates to a single transaction — the IPO — and to a single aspect of that transaction — the setting of the IPO price. All of the actions relating to the pricing of Openwave's IPO occurred on or before June 10, 1999, one day before the offering. FAC ¶¶ 40-46 (discussing the setting of the IPO price and defendants' knowledge, prior to June 10, 1999, that setting the IPO share price at $30 constituted "underpricing"). Therefore, to have standing to bring this derivative claim, Plaintiff must show that he was a shareholder on June 10, 1999, the time the IPO price was set.

### 2. Plaintiff Cannot Establish that He Owned Any Openwave Shares When The IPO Price Was Set.

There is no allegation that Plaintiff owned any shares of Openwave on June 10, 1999. Plaintiff himself does not allege the date on which he purchased his shares, let alone that he purchased his shares prior to the time the IPO price was set. Instead, Plaintiff alleges only that he acquired shares in Openwave "before there was disclosure to the public or to the Plaintiff of the wrongdoing complained of herein . . . ." FAC ¶¶ 12, 76.

Because Rule 23.1 requires share ownership at the time of the challenged

1  transaction, *i.e.*, June 10, 1999, Plaintiff has alleged no facts to support an inference that he was a

2  shareholder of Openwave at that time. As a result, Plaintiff does not have standing and his case

3  should be dismissed.

**IV.  CONCLUSION**

For all of the foregoing reasons, defendant Credit Suisse First Boston Corporation respectfully requests that the Court dismiss Plaintiff's Shareholder Derivative complaint, without leave to amend.

DATED: December 5, 2002

BINGHAM McCUTCHEN LLP

By: /s/ Stephen D. Hibbard
STEPHEN D. HIBBARD
Attorneys for Defendant
Credit Suisse First Boston Corporation